**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 15-1171

———————

STEVEN D'AGOSTINO,
Appellant

v.

APPLIANCES BUY PHONE, INC.; STEVEN SIGMAN; CHERYL SIGMAN

———————————————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 13-cv-07122)
District Judge:  Honorable Peter G. Sheridan

———————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 2, 2015
Before:  JORDAN, BARRY and VAN ANTWERPEN, Circuit Judges

(Opinion filed:  December 7, 2015)

———————

OPINION[*]

———————

PER CURIAM

    Steven D'Agostino appeals from the order of the United States District Court for

the District of New Jersey dismissing his complaint, and denying his motion for summary

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

judgment as moot. For the following reasons, we will affirm in part and vacate in part the District Court's order, and remand the matter for further proceedings.

This dispute arises out of a failed business relationship between D'Agostino, a website developer, and Appliances Buy Phone, Inc. ("ABP"), an online retailer of large home appliances; its sole shareholder, Steven Sigman (Sigman); and his wife Cheryl Sigman (collectively the "ABP defendants"). Beginning in 2003, D'Agostino provided various software design and website maintenance services for the ABP defendants and their website, AppliancesBuyPhone.com. In 2009, D'Agostino assisted Sigman with the development of a second website, Applicance4sale.com, for which Sigman owned the domain name. By 2010, however, the business relationship had soured and D'Agostino filed a complaint in the Superior Court of New Jersey, Law Division, against the ABP defendants and Google Inc.[1], asserting several state causes of action including unjust enrichment and breach of contract, as well as several federal claims, including one for cybersquatting. See D'Agostino v. Appliances Buy Phone, Inc., D.N.J. Civ. No. 10-cv-05414. On Google's motion, the matter was removed to the United States District Court for the District of New Jersey. The matter was remanded back to the Superior Court of New Jersey after D'Agostino amended his complaint to delete any federal claims and the District Court declined to exercise supplemental jurisdiction over the remaining state-law claims. In July 2013, the state court dismissed the claims against Google on summary judgment. A month later, partial summary judgment was granted in favor of the

---

[1] Google Inc. was incorrectly named as Google Corporation in the complaint.

remaining ABP defendants.[2]  In October 2013, a trial commenced on the remaining claims and a verdict was returned for the ABP defendants.

On November 22, 2013, while D'Agostino's motion for a new trial was pending in state court, he filed this matter in the District Court asserting that the ABP defendants infringed upon his copyright in computer software by sharing it with another website developer, thereby violating his rights under both state and federal law.  The complaint further alleged that the defendants had repeatedly registered the domain name "Applicances4Sale.com" in bad faith, with no intention of using it, in violation of the Anti-Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).  D'Agostino also sought damages for breach of contract, fraud, and breach of implied covenant of good faith and fair dealing.  The District Court granted the defendants' motion to dismiss, determining that the anti-cybersquatting claim, which was raised in the initial federal complaint but which D'Agostino deleted upon amendment, was barred by the statute of limitations.  The court declined to exercise supplemental jurisdiction over the remaining state-law claims.  D'Agostino filed a motion for reconsideration, arguing that the cybersquatting claim was not barred because it was a continuing wrong, and that the Court erred in failing to exercise jurisdiction over his copyright infringement claim.  After a hearing, the District Court denied the motion.  This appeal ensued.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  Our review of a motion to dismiss is plenary.  Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013).  We accept the

---

[2]  The District Court had dismissed the claims against Cheryl Sigman prior to remanding the matter to state court.

3

complaint's allegations as true, view them in the light most favorable to the plaintiff, and dismiss only if the claims lack facial plausibility. Id.

## The Cybersquatting Claim

D'Agostino argues that the District Court erred in holding that his cybersquatting claim was time barred. His arguments are not without some force.[3] Nevertheless, because we may affirm a claim's dismissal on any basis that finds support in the record, we turn to a question argued by the Appellees both in the District Court and here – whether D'Agostino's claim was barred by principles of res judicata. We conclude that it was.

Appellees argued in their motion to dismiss, as they do on appeal, that the cybersquatting claim is barred by the doctrine of claim preclusion and its "idiosyncratic" application in New Jersey, the entire controversy doctrine. Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997). Federal courts must, of course, give 'full faith and credit' to the judgments of state courts. 28 U.S.C. § 1738. It is clear that a federal cybersquatting claim can be raised in state court, as federal courts do not have exclusive jurisdiction over actions arising under the Lanham Act. See Aquatherm Indus., Inc. v. Fla. Power & Light Co., 84 F.3d 1388, 1394 (11th Cir.1996); Alpharma, Inc. v.

---

[3] The District Court concluded that a two-year limitations period governed D'Agostino's cybersquatting claim, but it is unclear how it came to that conclusion. The ACPA is an amendment to the Lanham Act, 15 U.S.C. § 1125, which does not contain a statute of limitations; rather, claims under the Act are subject to "principles of equity." 15 U.S.C. § 1117(a); see Santana Prods., Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 135 (3d Cir. 2005). To determine the applicable statute of limitations, courts look to the analogous state law as a guideline for determining whether the doctrine of laches bars a Lanham Act claim. Id. Neither the District Court nor the parties on appeal have specified which action under New Jersey law is most analogous to the cybersquatting

Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir. 2005). Where, as here, there is concurrent state and federal jurisdiction, we must look to state law to determine the preclusive effect of a state court judgment. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 85 (1984). The entire controversy doctrine requires a party to bring all related claims in a single action "against a particular adversary or be precluded from bringing a second action based on the omitted claims against that party." In re Mullarkey, 536 F.3d 215, 229 (3d Cir. 2008). "The effect of the doctrine is to preclude a party from withholding from the action for separate and later litigation a constituent component of the controversy even where that component is a separate and independently cognizable cause of action." Brown v. Brown, 506 A.2d 29, 32 (N.J. Sup. Ct. App. Div. 1986).

The entire controversy doctrine applies when (1) the judgment in the first action is valid, final, and on the merits; (2) there is identity of the parties, or the parties in the second action are in privity with those in the first action; and (3) the claim in the later action grows out of the same transaction or occurrence as the claim in the first action. See Watkins v. Resorts Int'l Hotel & Casino, Inc., 591 A.2d 592, 599 (1991). We agree with Appellees' contention – which D'Agostino has not disputed – that the cybersquatting claim "arose out of [the] same business relationship, the same parties and the same course of dealing that [were] the subject" of the state court action. Because it could have been brought as part of the state court action, it is precluded.

D'Agostino argues generally that he should not be precluded from pursuing his claim because, in his initial motion to remand in the first federal action, he indicated a

claim, and we decline to undertake that analysis in the first instance.

5

willingness to dismiss his federal claims, including his cybersquatting claim, provided that they would not be barred in the future by the entire controversy action. Specifically, he stated that he would dismiss the claims "provided that those claims could be pursued again at a later date, after completion of the state causes of action." Notably, the Magistrate Judge denied D'Agostino's motion, although he granted him leave to amend the complaint. In his amended complaint, D'Agostino eliminated the cybersquatting claim, but included a placeholder statement indicating that the cybersquatting claim was "[v]oluntarily dismissed by [D'Agostino] at this time, provided that the dismissal is without prejudice." Am. Compl. at ¶ 116.

D'Agostino's arguments against preclusion are grounded in principles of equity, which generally do not preclude the application of res judicata. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981) ("The doctrine of res judicata serves vital public interest beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.") (internal quotation marks and citation omitted).[4] D'Agostino chose to file his action, which included federal claims, in state court. The matter was properly removed to federal court on Defendant Google's motion. Notably, D'Agostino was put on notice by the APB defendants in their response to his initial motion to remand that he was incorrect in his assumption that he could return to federal court to relitigate his claims without running afoul of the entire

---

[4] D'Agostino's arguments do not fall within the limited equitable exceptions we have recognized. See generally Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 288 F.3d 519, 525 & n.3 (3d Cir. 2002).

6

controversy doctrine,[5] and the Magistrate Judge's order denying the motion provided no basis from which to conclude otherwise.  Nevertheless, D'Agostino made a tactical decision to voluntarily dismiss his federal claims, including his cybersquatting claim, to regain his original choice of forum and, in doing so, assumed the risk that his claim might be precluded.[6]  He is bound now by that decision.

Intellectual Property Claims

In his 2013 complaint, D'Agostino argued that defendants violated his "Copyright, Intellectual Property and Trade Secret rights" under "several federal and state laws, including but not limited to, the Uniform Trade Secrets Act, the Copyright Act, and the NJ Trade Secrets Act."  According to D'Agostino, the violation of his intellectual property rights occurred in November 2010, after the first lawsuit was filed, when the Sigmans allegedly shared his computer software with a competitor.  The software was developed in 2003 for the AppliancesBuyPhone.com website.  D'Agostino maintained

---

[5]  Indeed, the APB defendants outlined for D'Agostino his options for preserving his claim:  to obtain either a court order indicating that the claim was voluntarily dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(2), or a voluntary stipulation signed by all parties.  See Defs.' Opp'n to Mot. to Remand in D. N.J. Civ. No. 10-cv-05414, pg. 2.  D'Agostino did not obtain either.

[6]  There is no merit to D'Agostino's contention that the District Court's order remanding the matter to state court misled him by "impl[ying] that [he] could proceed as intended," and return to federal court with his cybersquatting claim.  At the time of the renewed motion to remand, the cybersquatting claim was no longer before the Court.  D'Agostino's notation in the amended complaint that the cybersquatting claim had been dismissed "without prejudice" was of no effect; the cases on which he relies to support his contention that this notation acted as an "express reservation" of his right to return to federal court are inapposite as they involve the federal abstention doctrine.  See e.g. England v. La. Bd. of Med. Exam'rs, 375 U.S. 411 (1964).  Nor is there any basis from which to conclude that the District Court expressly reserved the claim for a future action.  Venuto v. Witco Corp., 117 F.3d 754, 758 (3d Cir. 1997).

that, pursuant to their contract, the Sigmans had a non-transferable lifetime license to use the software, but only for that website. He alleges they were not authorized to sell, transfer, or share the software with any other person or entity, and had a duty of care to protect it. In its order dismissing the complaint, the District Court determined that the trade secrets claim was a common-law claim over which it declined to exercise supplemental jurisdiction; it did not directly address the copyright claim. In denying D'Agostino's motion for reconsideration, the Court, describing the action as "a sore loser's case," determined that the copyright claim "was known during the pendency of the initial action," and was therefore barred by res judicata.

The propriety of the District Court's dismissal of this claim turns on when it accrued. If the claim arose prior to the remand of the 2010 federal suit to state court, then we agree with the District Court that it would be barred by res judicata.[7] However, if the claim accrued after remand, then dismissal was in error. Jurisdiction to entertain suits under the Copyright Act, 17 U.S.C. § 501 et seq., rests solely with the federal courts. See

---

[7] The copyright claim arises out of the same 2003 business contract as the unjust enrichment, breach of contract, and pendent state law claims. The crux of the business relationship established in the contract was the license to use D'Agostino's computer software. The complaint alleges that the copyright infringement, like the other claims, was the direct result of the parties' failed business relationship. Because the underlying core set of facts are related, it is clear that the copyright claim would be barred under both federal principles of res judicata and the entire controversy doctrine. See DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995) (claims are related "if parties or persons will, after judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions"); Elkadrawy v. Vanguard Grp., Inc., 584 F.3d 169, 173 (3d Cir. 2009) (("A claim extinguished by res judicata 'includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction *or series of connected transactions,* out of which the action arose.'") (citing Restatement (Second) of Judgments § 24(1) (1982)) (emphasis in original).

28 U.S.C. § 1338(a). This fact, by itself, does not bar preclusion of the claim. See Marrese v. Am. Acad. of Orthopedic Surgeons, 470 U.S. 373, 380 (1985) ("[A] state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts."). Rather, we must look to state law to determine the preclusive effect of a claim over which the state court lacked subject matter jurisdiction. Id. at 381. It is clear that New Jersey law would not bar consideration of the copyright claim. See Nanavati v. Burdette Tomlin Mem'l Hosp., 857 F.2d 96, 112-13 (3d Cir. 1988) (holding that New Jersey claim preclusion does not apply to claims raised in a second action over which the court in the first action lacked jurisdiction); Marrese, 470 at 383 ("To the extent that state preclusion law indicates that a judgment normally does not have claim preclusive effect as to matters that the court lacked jurisdiction to entertain, . . . a state court judgment does not bar a subsequent federal [ ] claim."). Therefore, because a federal court is not at liberty to give greater preclusive effect to the state court's judgment than the entire controversy doctrine allows, the claim would not be barred. Id. at 384.

On appeal, as they did below, the parties dispute when the copyright claim accrued. D'Agostino asserts that he did not learn of the copyright infringement until 2013, during Cheryl Sigman's testimony at the end of the state court trial, and therefore could not have brought the copyright infringement claim in the 2010 suit. Appellees argue that Steven Sigman's counterclaim in the initial federal action, and the discovery exchanged in state court upon remand "set forth quite clearly the fact that the ABP defendants discontinued the use of Mr. D'Agostino's software products . . ." Appellees'

9

Br. at 16. This determination requires a resolution of factual issues that is inappropriate on a motion to dismiss. See Marks v. CDW Computer Ctrs., Inc., 122 F.3d 363, 367 (7th Cir. 1997) (stating that whether plaintiffs had sufficient information to put them on notice of their claims is a question of fact and is "often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)")). Accordingly, when the facts are viewed in the light most favorable to D'Agostino, it cannot be said at this stage of the pleadings that the claim is barred.

For the foregoing reasons, we will affirm the District Court's order as to the cybersquatting claim, vacate its order as to the dismissal of the copyright claim, and remand the matter for proceedings consistent with this opinion. In light of our disposition, the District Court may wish consider again whether to exercise supplemental jurisdiction over D'Agostino's state-law claims.